**UNTIED STATES DISTRICT COURT**
                    **EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **VICTOR DENNIS** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | |
| | * | |
| **CALM C'S, INC., WEEKS MARINE, INC.,** | * | **NO. 10-876** |
| **CONTANGO OIL & GAS COMPANY, M/V** | * | |
| **BAYOU PRINCESS, ITS APPURTENANCE,** | * | |
| **GEAR, TACKLE, ETC., AND G.D. MORGAN,** | * | |
| **ITS APPURTENANCE, GEAR, TACKLE, ETC.** | * | **SECTION "B"(1)** |

                          <u>**ORDER AND REASONS**</u>

   For the reasons pronounced below, **IT IS ORDERED** that Defendant's Motion for Summary Judgment (Rec. Doc. No. 65) is **GRANTED**.[1]

   I.  *Cause of Action and Facts of Case*

   This case arises from the February 26, 2010 explosion of a pipeline owned by Defendant, Contango Oil & Gas Company ("Contango"). (Rec. Doc. Nos. 5 at 1-2; 65-1 at 4).  In 2007, Contango received a permit from the U.S. Army Corp of Engineers ("ACE") to install and maintain a 20 inch gas/condensate pipeline originating at the Eugene Island Block 11H platform and terminating at the Eugene Island Block 63VP-Aux Platform. (Rec. Doc. No. 65-4).  Contango completed installation of the pipeline on April 5, 2008, and submitted a completion letter to the

---

[1] We are grateful for the work on this case by Laura N. Buck, a Tulane University Law School extern with our chambers.

Mineral Management Service ("MMS"), and the National Ocean Service ("NOS"). (Rec. Doc. No. 65-5). In January of 2010, the pipeline was charted on NOAA Chart number 11351. (Rec. Doc. No. 65-6). The pipeline is buried underwater and located outside the "3-mile line" offshore. (Rec. Doc. No. 65-1 at 5).

On February 26, 2010, Plaintiff, Victor Dennis, was working for Calm C's Inc. as a captain assigned to the crew boat M/V Bayou Princess. (Rec. Doc. Nos. 5 at 1; 65-1 at 4). The M/V Bayou Princess was owned by Calm C's, Inc. and contracted for by Weeks Marine, Inc. ("Weeks") to assist in the performance of maintenance dredging at or near Eugene Island near New Iberia. *Id.* Plaintiff alleges that the dredge hit Contango's pipeline causing the explosion. (Rec. Doc. No. 5 at 2). Plaintiff alleges to have suffered physical injuries due to the explosion including injury to his right knee, back, and neck. (Rec. Doc. Nos. 5 at 1; 65-1 at 4).

## II. *Law and Analysis*

A.  *Summary Judgment Standard*

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue

exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. Webb *v. Cardiothoracic Surgery Assocs. Of N. Texas*, 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id*. Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc*. 7 F.3d 1203, 1207 (5th Cir. 1993).

B. *Negligence Claims*

Under General Maritime Law, negligence "consists of doing that which a person of reasonable prudence would not have done, or of failing to do that which a person of reasonable prudence would have done under the circumstances." *Shulz v. Pennsylvania Railroad Company*, 350 U.S. 523, 525 (1956). The Code of Federal Regulations provides that the owner of a sunken vessel, raft or other obstruction that constitutes a hazard to navigation is required to mark it. 33 CFR 64.11. As used in this statute, "hazard to navigation" means "an obstruction, usually sunken, that presents sufficient danger to navigation so as to require

expeditious, affirmative action such as marking, removal, or redefinition of a designated waterway to provide for navigational safety." *Id.* at 64.06.  Additionally, the definition of a hazard to navigation under the Code's Pipeline Safety chapter is "a pipeline where the top of the pipe is less than 12 inches below the underwater natural bottom in waters less than 15 feet deep, as measured from the mean low water."  49 CFR 192.3.  Thus, an owner that fails to mark a pipeline with the top located less than twelve inches below the underwater natural bottom would be violating a safety statute, and this failure would be evidence of negligence.  *See id.; Shulz*, at 525.

Here, the Movant contends the pipeline at issue was buried more than twenty-three feet below the underwater natural bottom, and therefore, did not require marking.  (Rec. Doc. No. 111 at 3).  A pipeline owner is not negligent for damage sustained by the pipeline when it is struck by a vessel, where the pipeline is properly laid in accordance with the required permits.  *Marathon Pipeline Company v. Drilling Rig Odessa*, 527 F. Supp. 824, 831 (E.D. La. 1981).  Plaintiff disputes neither the depth of the pipeline, the manner in which it was laid, nor whether the proper permit was acquired.  (Rec. Doc. No. 96-1).  Instead, Plaintiff suggests that Movant breached his duty of giving Plaintiff notice of the existence and location of the pipeline even though the regulations may not specifically require marking.  *Id.* at 2.

4

Specifically, Plaintiff argues that inclusion of the pipeline on the NOAA Chart nearly two years after competition is insufficient compliance with Movant's duties to notify third parties. *Id.* at 4. Whether the Chart was timely updated is here immaterial as the parties do not dispute that it was updated and available to Plaintiff before the February 26, 2010 accident. *Id*.

The Permits and Statistics Branch of the New Orleans District gives public notice and retains file copies of construction permits. (Rec Doc. 64 at 10-11.) After completing construction of the pipeline, Defendant notified the MMS and the NOS of the presence and location of the pipeline. Additionally, the location of the pipeline was charted on NOAA Chart No. 11351 in January, 2010. *Id.; see* ACE Permit for Pipeline, letter of completion to MMS and NOS, and Chart No. 11351 to. (Rec. Doc. Nos. 65-4, 65-5, 65-6). According to 49 CFR §195.410, line markers are not required for pipelines buried more than 12 inches below the bottom of the body of water. (Rec. Doc. No. 111 at 3).

Plaintiff has failed to provide evidence, more than just conclusory statements, which show that there is a genuine issue for trial against Movant. (*See* Rec. Doc. Nos. 96, 96-1). Plaintiff has failed to assert specific facts that would require marking of Movant's pipeline or giving notice beyond what Movant gave, or as required by custom, law or safe navigational practice for this location. *Id*. Although Plaintiff alleges that

5

discovery is not complete, no additional discovery will change the undisputed fact that the pipeline was marked on the NOAA chart prior to the explosion, and Movant is not responsible for Plaintiff's failure to check the available charts before dredging the area at issue.[2]  Accordingly, the instant Motion for Summary Judgment is herein granted.

New Orleans, Louisiana, this 28th day of July, 2011.

_____
UNITED STATES DISTRICT JUDGE

---

[2] Plaintiff cites case law to support the proposition that "the fact that a contract with a governmental agency requires that the pipeline be marked on some areas does not excuse the non-marking of other areas when such markings are required by custom, law or safe navigational practice." (Rec. Doc. No. 96 at 6)(citing *Higman Towing Co. v. Dredge Tom James*, 637 F. Supp. 925, 929 (E.D. Tex. 1986); S. Natural Gas. Co. v. Gulf Oil Corp., 320 So. 2d 917, 918-26 (La. Ct. App. 1975)).  However, those cases involved a submerged or exposed pipeline while this case involves a buried pipeline.  *See Higman*, 637 F. Supp. at 927; *S. Natural Gas*, 320 So. ed at 917; (Rec. Doc. No. 111 at 3). Unlike the sunken obstruction in *Higman* and *S. Natural Gas*, a buried pipeline does not pose a hazard to navigation if laid according to the proper permits.  *See Higman,* 637 F. Supp. at 928; *Marathon*, 527 F. Supp at 831; *S. Natural Gas* at 917.