```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF LOUISIANA
```

**VICTOR DENNIS**                                   **CIVIL ACTION**

**VERSUS**                                          **NUMBER: 10-0876**

**CALM C'S, INC., WEEKS MARINE, INC.**              **SECTION: "B"(1)**
**CONTANGO OIL COMPANY, ET AL**

### ORDER AND REASONS

Before the Court is Defendant Weeks Marine's ("Weeks") Motion for Summary Judgment on Plaintiff's Unseaworthiness, Jones Act, and Maintenance and Cure Claims. (Rec. Doc. No. 68). Plaintiff has filed a memorandum in opposition thereto at Rec. Doc. No. 97. Accordingly, and for the reasons pronounced below,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Rec. Doc. No. 68) is **GRANTED IN PART** and **DENIED, IN PART. IT IS FURTHER ORDERED** that the motion is **GRANTED** as to Plaintiff's claims of unseaworthiness and **DENIED** as to Plaintiff's claims for Maintenance and Cure and claims made under the Jones Act.

I. *Cause of Action and Facts of Case*

The facts of this case are well known to the Court and need not here be repeated as they are discussed in detail in previous Orders. *See* Rec. Doc. Nos. 143, 146. In short, this case arises from the February, 2010 explosion of a pipeline owned by Defendant, Contango Oil & Gas Company ("Contango"). (Rec. Doc. Nos. 5 at 1-

2).

## II. *Parties' Contentions*

### A. Contentions of Movant

Movant Weeks contends that Plaintiff was neither employed by Weeks nor a crew member of the Dredge. (Rec. Doc. No. 68-1 at 1). As a result, Movant argues that, based on established law of the Fifth Circuit, Plaintiff is precluded from asserting an unseaworthiness claim against Weeks for any alleged unseaworthy condition of the Dredge. *Id*. Further, Movant contends that because Plaintiff was not an employee of Weeks or a crew member of the Dredge, he is not entitled to maintain a Jones Act or maintenance and cure claim against Weeks. *Id*. at 2.

### B. Contentions of Respondent

Respondent contends that a seaman may have more than one Jones Act employer and that Plaintiff was a seaman in the service of the Dredge flotilla and a borrowed employee of Weeks. (Rec. Doc. No. 97 at 2-3). Further, respondent asserts that Plaintiff was also a crew member of the dredge flotilla, being that it was under the common control of Weeks and constituted a fleet of vessels to which Plaintiff owed allegiance, took orders, and furthered the mission of the fleet and the G.D. Morgan. *Id*. at 3. Respondent states that Plaintiff is entitled to a warranty of seaworthiness as a result of his seaman status vis-a-vis the G.D. Morgan and the dredge flotilla, and Plaintiff may assert an action against Weeks

for the breach of that warranty by their failure to have proper charting. *Id*.

## II. *Law and Analysis*

A. <u>Summary Judgment Standard</u>

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas,* 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id*. Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.* 7 F.3d 1203, 1207 (5th Cir. 1993).

B.   <u>Jones Act Liability - Employer Status</u>

The Jones Act grants a seaman a cause of action against his employer for negligence.  46 U.S.C. § 688.  "Thus, the Jones Act grants seamen who suffered personal injury in the course of their employment the right to seek damages in a jury trial against their employers in the same manner as the Federal Employer's Liability Act. . . ."  Thomas J. Schoenbaum, 1 <u>Admiralty & Mar. Law</u> § 6-21 (4th ed) (citing 45 U.S.C. § 51).  In order to trigger liability, an injured seaman must produce evidence that the shipowner or the shipowner's employees or agents were negligent.  *Marvin v. Cent. Gulf Lines, Inc.*, 554 F.2d 1295 (5th Cir. 1977).  An employer's negligence can arise from its failure to use reasonable care to provide the employee with a safe place in which to work, its failure to inspect the vessel for hazards, its failure to take reasonable precautions to protect the employee from defects, and any other breach of the shipowner's duty of care.  *Davis v. Hill Engineering, Inc.*, 549 F.2d 314, 329 (5th Cir. 1997) *overruled on other grounds by Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331 (5th Cir. 1997).  Additionally, the employer has a duty to warn the seaman of a dangerous condition of which the employer should be aware.  *Varrett v. McDonough Marine Service*, 705 F.2d 1437 (5th Cir. 1983); *Martin v. Walk, Haydel and Associates, Inc.*, 742 F.2d 246 (5th Cir. 1984), appeal after remand 794 F.2d 209 (1986).  However, a shipowner has no duty to warn crewmembers of an open and

obvious danger. *Patterson v. Allseas USA, Inc.*, 2005 WL 1350594 (5th Cir. 2005).

A vessel owner must use "reasonable care to maintain a reasonably safe work environment" and is liable if he fails to exercise such reasonable care. *Ober v. Penrod Drilling Co.*, 726 F.2d 1035, 1037 (5th Cir. 1984). This duty on behalf of the vessel owner is non-delegable, and the court "will not allow employers to deny Jones Act coverage to seamen by arrangements with third parties regarding the vessel's operation or by the manner in which work is assigned." *Bertrand v. Int'l Mooring & Marine, Inc.*, 700 F.3d 240, 245 (5th Cir. 1983). *See also Williams v. Milwhite Sales Co.*, 197 F. Supp. 730 (E.D. La. 1967); *Barrios v. Louisiana Construction & Materials Co.*, 465 F.2d 1157 (5th Cir. 1972). Thus, an employer's duty under the Jones Act "extends to providing a safe place to work on the ship of a third party over whom the employer has no control, if that is where the seaman's employer sends him to work." *Ribitzki v. Canmar Reading & Bates, Ltd. Partnership*, 111 F.3d 658, 662 (9th Cir. 1997) (citing *Davis v. Hill Engineering, Inc.*, 549 F.2d at 329).

Furthermore, seamen can have more than one employer for purposes of the Jones Act, and the US Fifth Circuit in *Ruiz v. Shell Oil Co.* mentioned nine questions to be answered in determining whether an employee is to be considered a borrowed employee of another. 413 F.2d 310, 312 (5th Cir. 1969). The court

states that "while no one of these factors, or any combination of them, is decisive, and no fixed test is used to determine the existence of a borrowed-servant relationship, the following tests have been given great weight:"

> (1) Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?
>
> (2) Whose work is being performed?
>
> (3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?
>
> (4) Did the employee acquiesce in the new work situation?
>
> (5) Did the original employer terminate his relationship with the employee?
>
> (6) Who furnished tools and place for performance?
>
> (7) Was the new employment over a considerable length of time?
>
> (8) Who had the right to discharge the employee?
>
> (9) Who had the obligation to pay the employee?

*Id*. 312-13.  Here, Weeks has admitted in their Statement of Uncontested Facts that Plaintiff was assigned tasks by Weeks employees (i.e., transport personnel from point A to point B). (Rec. Doc. No. 68-4 at 2).  This indicates sufficient control over the employee and the work that is being done in relation to the first of these factors.  Regarding the second factor, the transporting of these work crews and supplies is beneficial to the Dredge and Weeks, it thus seems rational to conclude this to be Weeks' work being performed.

Next, Harold Corkern, owner and president of Calm C's, testified that Calm C's relinquished almost all control over Plaintiff to Weeks, which seems to satisfy a meeting of the minds between the original and borrowing employee, posed by the third question. (Rec. Doc. No. 97-1 at 8). Regarding the fourth factor, Plaintiff acquiesced in the new work situation by taking his instructions by the captain and deck captain of the Dredge. (Rec. Doc. No. 68-2 at 9).  With regard to the fifth factor, Calm C's did not terminate their relationship with Plaintiff.  *Id*.  Calm C's furnished the boat for Plaintiff, in relation to the sixth question.  (Rec. Doc. No. 97-1 at 2).  In relation to the seventh factor, whether the new employment was over a considerable length of time, Plaintiff had been in control of the Bayou Princess for

twenty days, which seems to be a considerable length of time.[1] (Rec. Doc. No. 97-1 at 6).

Finally, in response to questions eight and nine, Calm C's had both the obligation to pay and the right to fire the Plaintiff; however, it is noteworthy that Plaintiff testified that Weeks could have him taken off the job, if they asked Corkern to do so. (Rec. Doc. No. 97 at 5). In this vein the answers to the eighth and ninth factors do militate against a finding that Dennis was a borrowed servant.

However, based on the totality of evidence discussed above, the factors that support a finding that Plaintiff was a borrowed servant outweigh those to the contrary. As a result, it seems clear that Weeks was an employer of Plaintiff, thus attaching potential Jones Act liability.

It is recommended that summary judgement of Plaintiff's Jones Act claims be denied.

C. Warranty of Seaworthiness

"In order to state a cause of action for unseaworthiness a plaintiff must allege his injury was caused by a defective condition of the ship, its equipment or appurtenances." Thomas J. Schoenbaum, 1 Admiralty & Mar. Law § 6-25 (4th ed). The

---

[1] Where the length of time the employee has worked for the borrowing employer is considerable, this factor is significant and supports a finding that the employee was a borrowed servant. The converse, however, is not true. Courts have found one day of employment to be sufficient for a finding of borrowed servant. *Capps v. N.L. Baroid-NL Industries, Inc.*, 784 F.2d 615 (5th Cir.1986).

unseaworthiness claim "developed independently of Jones Act negligence and has been treated as a separate cause of action. . . ." *Brunner v. Maritime Overseas Corp.*, 779 F.2d 296, 298 (5th Cir. 1986). Under the theory of seaworthiness, the shipowner has an absolute duty to provide a seaworthy vessel, but the vessel need not be "accident free." *Simeon v. T. Smith & Son, Inc.*, 852 F.2d 1421, 1432-33 (5th Cir. 1988) (citing *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539 (1960); *Brunner v. Maritime Overseas Corp.*, 779 F.2d 296, 298 (5th Cir. 1986)). The standard for seaworthiness is whether the vessel or its equipment or appurtenances are reasonably fit for their intended use. *Id*. "The duty to provide a seaworthy vessel is absolute and the owner may not delegate the duty to anyone." *Bommarity v. Penrod Drilling Corp.*, 929 F.2d 186, n.2 (5th Cir. 1991).

In order "for a vessel to be found unseaworthy, the injured seaman must prove that the owner has failed to provide a vessel, including [the vessel's] equipment and crew, which is reasonably fit and safe for the purposes for which it is to be used." *Jackson v. OMI Corp.*, 245 F.3d 525, 527 (5th Cir. 2001). To prevail, the plaintiff must show that the shipowner breached his duty to provide a seaworthy ship, and that this breach of duty rendered the vessel unseaworthy and caused the injury sustained by the plaintiff. *Id*. *See also Foster v. Destin Trading Corp.*, 700 So.2d 199, 209 (La. 1997) (The seaman bears the burden of proving that "the unseaworthy

condition played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness.").

However, a vessel owner's duty to provide a seaworthy vessel extends only to seamen employed by the ship, generally. *Miles v. Apex Marine Corp. Et Al.*, 498 U.S. 19, 27 (1990).

> A seaman permanently assigned to one vessel cannot pursue an unseaworthiness claim for injuries sustained aboard a second vessel with which the seaman only had a transitory relationship. In *Smith v. Harbor Towing,* a crew member of a tug preparing to push two fuel barges was injured after boarding one of the barges. The Fifth Circuit affirmed the district court's finding that the barge owner did not owe the plaintiff a duty of seaworthiness because he was not a crew member of the barge.

*Picou v. D&L Towing, Inc.,* 2010 WL 2696468 (E.D. La. 2010).

Here, while it may be that Plaintiff is a borrowed employee of Weeks, that does not *ipso facto* make him a crew member/employee of the dredge. Plaintiff had only limited contact with the Dredge. Plaintiff's employment centered around transporting cargo and personnel to and from the Dredge. According to his deposition, Plaintiff asserts that he was not employed by Weeks, performed no work on the Dredge, and that he was assigned to the M/V Bayou

Princess. (Rec. Doc. No. 68-1 at 5-6). Additionally, Plaintiff was aboard the M/V Bayou Princess at the time of the accident. (Rec. Doc. No. 97-1 at 10). The mere fact that Plaintiff would take his meals, get coffee, and occasionally have some "downtime" on the Dredge does not elevate him to crewmember status.

As a result, it is recommended that summary judgement be granted regarding Plaintiff's claims of unseaworthiness against Weeks.

D.   Duty of Seaworthiness Under the "Flotilla Doctrine"

"Under the 'flotilla doctrine' or 'single venture theory,' all vessels engaged in a common venture may be considered one vessel for limitation purposes." *Matter of Antill Pipeline Const. Co., Inc.,* 1998 WL 321512 (E.D. La. 1998) (citing *In Re Waterman S.S. Corp.,* 794 F.Supp 601, 601 (E.D. La. 1992)). Plaintiff argues that the M/V Bayou Princess was part of the dredge flotilla and that "the appropriate defendant in an unseaworthiness case is the person who had operational control of the ship at the time the condition was created or the accident occurred," which would be Weeks. Thomas J. Schoenbaum, 1 Admir. & Mar. Law Section 6-25 (4th ed.).

However, "the Fifth Circuit Court of Appeals looks for three factors in determining whether a particular vessel is includable in the limitation fund under the flotilla doctrine: (1) common ownership; (2) common enterprise; and (3) single command." *Matter of Antill Pipeline Const. Co., Inc.,* 1998 WL 321512 (E.D. La. 1998)

(citing *Cenac Towing Co. v. Terra Resources, Inc.*, 734 F.2d 251, 254 (5 th Cir. 1984); *Drill Barge No. 2.*, 454 F.2d at 411; *Brown & Root Marine Operators, Inc. v. Zapata Off-Shore Co.*, 377 F.2d 724, 727 (5th Cir. 1967)). Furthermore, "at a minimum, any vessel in a flotilla must be subject to common ownership" to be considered part of that flotilla. *Cenac Towing* 734 F.2d at 254 (citing 3 Benedict on Admiralty Section 54 at 6-13 & n.1 (7th ed. 1983)).

In the present case, it is undisputed that Weeks did not own the M/V Bayou Princess. Further, Plaintiff would not be able to satisfy the "single command" element of the test, because he testified that he was captain and in control of the M/V Bayou Princess during his deposition. (Rec. Doc. No. 68-2 at 14-15). As a result, the M/V Bayou Princess was not part of a "flotilla."

It is recommended that summary judgement of Plaintiff's unseaworthiness claims under the flotilla doctrine be granted.

E.   Obligation to Pay Maintenance and Cure

"An employer-employee relationship must exist before a seaman may recover maintenance and cure." *Cordova v. Cromley Marine Servs., Inc.*, 2003 WL 21790195 (E.D. La. 2003). "In determining who is an employer with respect to liability for maintenance and cure, the same criteria apply as to the determination of liability under the Jones Act. *Id.*

As discussed *supra*, seamen can have more than one employer for purposes of the Jones Act if the seaman is found to be within the

classification of a "borrowed employee," by applying the nine factors set forth by the US Fifth Circuit in *Ruiz v. Shell Oil Co.* It has already been determined that Plaintiff would be considered one of these "borrowed employees" under the test established in *Ruiz;* and, according to the language in *Cordova v. Cromley Marine Servs.,* Weeks should also be considered the employer with respect to liability for maintenance and cure. *Id*.

It is recommended that summary judgement of Plaintiff's maintenance and cure claims be denied.

F.   Conclusion

For the reasons enunciated above,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Rec. Doc. No. 68) is **GRANTED IN PART** and **DENIED, IN PART.  IT IS FURTHER ORDERED** that the motion is **GRANTED** as to Plaintiff's claims of unseaworthiness and **DENIED** as to Plaintiff's claims for Maintenance and Cure and claims made under the Jones Act.

New Orleans, Louisiana, this 30th day of August, 2011.

_____
UNITED STATES DISTRICT JUDGE