```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

VICTOR DENNIS                            CIVIL ACTION NO. 10-876

VERSUS                                   JUDGE LEMELLE

CALM C'S, INC., et al.                   MAGISTRATE JUDGE SHUSHAN
```

## ORDER AND REASONS

Before the Court is Defendant Calm C's Motion for Summary Judgment seeking dismissal of Plaintiff's claims of Jones Act negligence and unseaworthiness under general maritime law. (Rec. Doc. No. 66). Plaintiff has filed a response thereto at Rec. Doc. No. 95. For the reasons pronounced below, Defendant's Motion for Summary Judgment (Rec. Doc. No. 66) is **GRANTED.**

The facts of this case are well known to the Court and need not here be repeated as they are discussed in detail in previous Orders. *See* Rec. Doc. Nos. 143, 146. In short, this case arises from the February, 2010 explosion of a pipeline owned by Defendant, Contango Oil & Gas Company ("Contango"). (Rec. Doc. No. 5 at 1-2).

Defendant Calm C's primarily contends that because Plaintiff testified in his deposition "that Calm C's was not negligent and that [the vessel,] the M/V Bayou Princess, was not unseaworthy" these claims must be dismissed. (Rec. Doc. No. 66-1 at 2).

Plaintiff contends that Defendant's argument "ignores the unseaworthiness of the M/V Bayou Princess on account of a lack of adequate charting and of the existing charting, here in electronic

form publicly available and downloadable from NOAA." (Rec. Doc. No. 95 at 2). Similarly, Plaintiff contends that Defendant was negligent as it failed to ensure Plaintiff had a safe place to work due to Defendant's failure " to make certain that Weeks, to whose care it had entrusted [Plaintiff], had adequate and proper charts." *Id*. at 3. Finally, Plaintiff contends that Weeks was an agent of Defendant and thus, "the negligence of Weeks constitutes Jones Act negligence on the part or [Defendant]." *Id*.

A.   <u>Summary Judgment Standard</u>

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas,* 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence

to establish a genuine issue. *Id.* Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.* 7 F.3d 1203, 1207 (5th Cir. 1993).

B.  <u>Jones Act Negligence</u>

The Jones Act grants a seaman a cause of action against his employer for negligence. 46 U.S.C. § 688. "Thus, the Jones Act grants seamen who suffered personal injury in the course of their employment the right to seek damages in a jury trial against their employers in the same manner as the Federal Employer's Liability Act." Thomas J. Schoenbaum, 1 Admiralty & Mar. Law § 6-21 (4th ed) (citing 45 U.S.C. § 51). In order to trigger liability, an injured seaman must produce evidence that the shipowner or the shipowner's employees or agents were negligent. *Marvin v. Cent. Gulf Lines, Inc.*, 554 F.2d 1295 (5th Cir. 1977). An employer's negligence can arise from its failure to use reasonable care to provide the employee with a safe place in which to work, its failure to inspect the vessel for hazards, its failure to take reasonable precautions to protect the employee from defects, and any other breach of the shipowner's duty of care. *Davis v. Hill Engineering, Inc.*, 549 F.2d 314, 329 (5th Cir. 1997) *overruled on other grounds by Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331 (5th Cir. 1997). Additionally, the employer has a duty to warn the seaman of a dangerous condition of which the employer should be aware. *Varrett*

*v. McDonough Marine Service*, 705 F.2d 1437 (5th Cir. 1983); *Martin v. Walk, Haydel and Associates, Inc.*, 742 F.2d 246 (5th Cir. 1984), appeal after remand 794 F.2d 209 (1986).  However, a shipowner has no duty to warn crewmembers of an open and obvious danger.  *Patterson v. Allseas USA, Inc.*, 2005 WL 1350594 (5th Cir. 2005).

A vessel owner must use "reasonable care to maintain a reasonably safe work environment" and is liable if he fails to exercise such reasonable care.  *Ober v. Penrod Drilling Co.*, 726 F.2d 1035, 1037 (5th Cir. 1984).  This duty on behalf of the vessel owner is non-delegable, and the court "will not allow employers to deny Jones Act coverage to seamen by arrangements with third parties regarding the vessel's operation or by the manner in which work is assigned."  *Bertrand v. Int'l Mooring & Marine, Inc.*, 700 F.3d 240, 245 (5th Cir. 1983).  *See also Williams v. Milwhite Sales Co.*, 197 F. Supp. 730 (E.D. La. 1967); *Barrios v. Louisiana Construction & Materials Co.*, 465 F.2d 1157 (5th Cir. 1972).  Thus, an employer's duty under the Jones Act "extends to providing a safe place to work on the ship of a third party over whom the employer has no control, if that is where the seaman's employer sends him to work."  *Ribitzki v. Canmar Reading & Bates, Ltd. Partnership*, 111 F.3d 658, 662 (9th Cir. 1997) (citing *Davis v. Hill Engineering, Inc.*, 549 F.2d at 329).

Defendant cites portions of Plaintiff's deposition testimony in which Plaintiff agreed that, on the day of the explosion, the

vessels engines, steering, and radio were "working okay" and that nothing about the condition of the vessel's deck caused him any concern. (Rec. Doc. Nos. 66-3 at 25-26, 42; 66-4 at 8). Defendant's also cite the following portion of Plaintiff's deposition testimony:

> Q. Was there anything wrong with the BAYOU PRINCESS, either the way she was designed, the way she was operating, the way any of her equipment was situated or operating, anything wrong with the deck, anything wrong with the steering, anything at all wrong with the BAYOU PRINCESS that caused you to be injured that morning?
>
> A. No.

(Rec. Doc. No. 66-4 at 45). In response to later questions in the same deposition asking whether Calm C's or its owner and president, Harold Corken could have done anything different to prevent the explosion, Plaintiff's answer to the above question was used as grounds for an objection of "asked and answered". (Rec. Doc. No. 66-5 at 119-121).

Thus it appears that summary judgment of Plaintiff's claims of negligence against Defendant should be granted, including Plaintiff's claims that Defendant's failure to provide adequate charts constitute negligence. However, as Plaintiff also asserts that the failure to provide up to date NOAA charts rendered the vessel unseaworthy, the issue of unseaworthiness of the vessel must be addressed.

C.  <u>Unseaworthiness</u>

"In order to state a cause of action for unseaworthiness a

plaintiff must allege his injury was caused by a defective condition of the ship, its equipment or appurtenances." Thomas J. Schoenbaum, 1 Admiralty & Mar. Law § 6-25 (4th ed). The unseaworthiness claim "developed independently of Jones Act negligence and has been treated as a separate cause of action." *Brunner v. Maritime Overseas Corp.*, 779 F.2d 296, 298 (5th Cir. 1986). Under the theory of seaworthiness, the shipowner has an absolute duty to provide a seaworthy vessel, but the vessel need not be "accident free." *Simeon v. T. Smith & Son, Inc.*, 852 F.2d 1421, 1432-33 (5th Cir. 1988) (citing *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539 (1960); *Brunner v. Maritime Overseas Corp.*, 779 F.2d 296, 298 (5th Cir. 1986)). The standard for seaworthiness is whether the vessel or its equipment or appurtenances are reasonably fit for their intended use. *Id*. "The duty to provide a seaworthy vessel is absolute and the owner may not delegate the duty to anyone." *Bommarity v. Penrod Drilling Corp.*, 929 F.2d 186, n.2 (5th Cir. 1991).

In order "for a vessel to be found unseaworthy, the injured seaman must prove that the owner has failed to provide a vessel, including [the vessel's] equipment and crew, which is reasonably fit and safe for the purposes for which it is to be used." *Jackson v. OMI Corp.*, 245 F.3d 525, 527 (5th Cir. 2001). To prevail, the plaintiff must show that the shipowner breached his duty to provide a seaworthy ship, and that this breach of duty rendered the vessel

6

unseaworthy and caused the injury sustained by the plaintiff. *Id*. *See also Foster v. Destin Trading Corp.*, 700 So.2d 199, 209 (La. 1997) (The seaman bears the burden of proving that "the unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness.").

This Court previously found, in its July 28, 2011 order and reasons that "[w]hether the Chart was timely updated is here immaterial as the parties do not dispute that it was updated and available to Plaintiff before the February 26, 2010 accident."[1] (Rec. Doc. No. 143 at 5). The Court later reiterated "the undisputed fact that the pipeline was marked on the NOAA chart prior to the explosion." *Id*. at 6. Thus Plaintiff's argument regarding a lack of up to date chart fails in accordance with this Court's prior order discussed *supra* and Plaintiff's testimony stating that he had access to the up to date charts from the vessel's GPS systems. (Rec. Doc. No. 66-4 at 49-50).

Finally, Plaintiff's argument that he was assigned to a "Weeks Dredge Flotilla" has already been resolved by this court in its August 30, 2011 order and reasons finding that the "M/V Bayou Princess was not part of a flotilla." (Rec. Doc. No. 164 at 12). Any argument by Plaintiff that Calm C's had an obligation to ensure that the charts on the dredge were up to date have been resolved in

---

[1] The pipeline was charted on NOAA Chart number 11351 in January of 2010. *See* Rec. Doc. No. 65-6.

the discussion of availability of charts *supra*.

Accordingly, and for the reasons herein articulated, Defendant's Motion for Summary Judgment (Rec. Doc. No. 66) is **GRANTED.**

New Orleans, Louisiana, this 30th day of September, 2011.

_____
UNITED STATES DISTRICT JUDGE